**[This decision has been published in *Ohio Official Reports* at 93 Ohio St.3d 409.]**

**OFFICE OF DISCIPLINARY COUNSEL *v*. KELLEY.**

**[Cite as *Disciplinary Counsel v. Kelley*, 2001-Ohio-1317.]**

*Attorneys at law—Misconduct—Two-year suspension with second year stayed—*
*Neglect of an entrusted legal matter—Engaging in conduct prejudicial to*
*the administration of justice—Engaging in conduct adversely reflecting*
*on fitness to practice law—Failing to cooperate and to assist in*
*disciplinary investigation.*

(No. 01-746—Submitted July 17, 2001—Decided September 26, 2001.)

ON CERTIFIED REPORT by the Board of Commissioners on Grievances and
Discipline of the Supreme Court, No. 99-76.

_____

COOK, J.

{¶ 1} On December 6, 1999, relator, Office of Disciplinary Counsel, filed a
five-count complaint against respondent, John Main Kelley of Lancaster, Ohio,
Attorney Registration No. 0003204. Respondent failed to answer, and relator filed
a motion for default with the Board of Commissioners on Grievances and
Discipline of the Supreme Court ("board") on November 8, 2000.

{¶ 2} Relator's motion for default was accompanied by the affidavit of
Kenneth R. Donchatz, Assistant Disciplinary Counsel, who averred that he had
contacted respondent on May 12, 2000, in order to advise him that he was in default.
Respondent claimed that he had filed an answer. Donchatz assured respondent that
no answer had been filed and provided respondent with contact information for the
board so that respondent could arrange to file his answer. Respondent never filed
an answer, nor did respondent reply to relator's motion for default.

**{¶ 3}** The matter was referred to board member Dale K. Perdue for a ruling on relator's motion for default under Gov.Bar R. V(6)(F)(2). Perdue found the following facts as alleged in relator's motion for default.

*Count One—The Whitfield Matter*

**{¶ 4}** In April 1997, Philip Whitfield retained respondent to assist him in terminating his marriage. Respondent drafted a dissolution petition and presented it to Mrs. Whitfield and her attorney. During negotiations over child support and child custody, Mr. Whitfield tried to contact respondent by mail and telephone on several occasions without success. In November 1997, Mr. Whitfield asked respondent to file a complaint for divorce in the Fairfield County Court of Common Pleas. Respondent agreed, but failed to file the complaint in a timely manner.

**{¶ 5}** In April 1998, Mrs. Whitfield's attorney filed a complaint for divorce on her behalf in the Madison County Court of Common Pleas. That court ordered Mr. Whitfield to pay temporary child support, but respondent failed to inform Mr. Whitfield of the order. Mr. Whitfield did not learn of the order until the second week of November 1998. During the course of his representation of Mr. Whitfield, respondent routinely failed to return telephone calls and respond to written correspondence.

*Count Two—The Clark Matter*

**{¶ 6}** In September 1994, the Fairfield County Court of Common Pleas appointed respondent to be guardian of Freeman and Kay Clark, who were husband and wife. Kay Clark died in 1995, and respondent continued to act as Freeman's guardian until his death in 1997. Respondent failed to prepare income tax returns for the Clark estate and failed to conduct routine maintenance on the Clarks' residence and rental property. As a result, the Clark estate incurred significant expenses and damages.

*Count Three—The Glaze Matter*

**{¶ 7}** Following the death of Helen Glaze in February 1999, her son and daughter retained respondent to administer Glaze's estate. Respondent filed an application to probate Glaze's will but did not take any steps to ensure the proper administration of the estate. Respondent failed to inventory estate assets and failed to request appointment of a fiduciary. When Glaze's children began receiving bills from Glaze's creditors, they contacted respondent to seek advice, but respondent routinely neglected to return their telephone calls. In August 1999, Glaze's daughter obtained her mother's file from respondent in order to provide it to her new attorney. Reviewing the file, she discovered many unopened and unpaid bills.

*Count Four—The Jacques Matter*

**{¶ 8}** In January 1997, the Fairfield County Court of Common Pleas appointed respondent to be the guardian of Linda Jacques. At some point prior to January 1999, Jacques and her siblings inherited property from their father and grandfather. And from January 1999 and thereafter, Jacques resided in a nursing home and was receiving Medicaid benefits. In order to ensure continued receipt of those benefits, Jacques was required to liquidate her interest in the property. Jacques's siblings purchased her interest in the property, but respondent failed to execute the transfer of title, placing Jacques at the risk of losing her Medicaid benefits.

*Count Five—Failure to Cooperate with Relator's Investigation*

**{¶ 9}** Respondent failed to respond to two letters of inquiry sent by relator in the Whitfield matter, though he personally received them. Subsequently, as an alternative to sitting for a deposition, respondent committed to responding to the Whitfield letters of inquiry in writing, but he never did. Respondent likewise failed to respond to six additional letters of inquiry sent by relator in the Clark, Glaze, and Jacques matters.

**{¶ 10}** Board member Perdue concluded that, with respect to each of the client matters described above, respondent had violated the following Disciplinary Rules: DR 6-101(A)(3) (a lawyer shall not neglect a legal matter entrusted to him), DR 1-102(A)(5) (a lawyer shall not engage in conduct prejudicial to the administration of justice), and DR 1-102(A)(6) (a lawyer shall not engage in conduct that adversely reflects on the lawyer's fitness to practice law). In addition, he found that respondent had violated Gov.Bar R. V(4)(G) (a lawyer has a duty to cooperate with disciplinary counsel and to assist in the investigation of an alleged grievance).

**{¶ 11}** In considering the appropriate sanction, the board member found no mitigating factors applicable. He did, however, find that respondent's lack of cooperation in the disciplinary process was an aggravating factor to be considered under the Rules and Regulations Governing Procedure on Complaints and Hearings Before the Board of Commissioners on Grievances and Discipline of the Supreme Court, Section 10(B)(1)(e), Guidelines for Imposing Lawyer Sanctions ("Guidelines for Imposing Lawyer Sanctions"). Board member Perdue recommended that respondent be indefinitely suspended from the practice of law in Ohio.

**{¶ 12}** The board adopted board member Perdue's findings of fact, conclusions of law, and recommendation. Respondent filed objections in response to this court's show cause order, relator responded, and the matter was submitted to this court for consideration on July 17, 2001.

**{¶ 13}** We adopt the findings and conclusions of the board. As respondent concedes, the board's findings of fact are "justified by the current state of the record given [r]espondent's failure to respond," and respondent does not object to the board's conclusions of law. Respondent admits that this case presents "multiple instances of neglect, compounded by a serious lack of cooperation."

**{¶ 14}** Though we adopt the board's findings and conclusions, we impose a lesser sanction than that recommended by the board. See *Lake Cty. Bar Assn. v. Smith* (1999), 85 Ohio St.3d 402, 709 N.E.2d 116; *Cuyahoga Cty. Bar Assn. v. Williams* (1999), 84 Ohio St.3d 515, 705 N.E.2d 1216; *Akron Bar Assn. v. Bodnar* (1999), 84 Ohio St.3d 372, 704 N.E.2d 236.

**{¶ 15}** The board indicated that it was "aware of no factors in mitigation of [r]espondent's conduct." Yet, the board conceded that respondent has not been disciplined since being admitted to the practice of law in Ohio in 1953. Given that "absence of a prior disciplinary record" is among those mitigating factors enumerated in the board's own Guidelines for Imposing Lawyer Sanctions, we assign some weight to this factor. See Guidelines for Imposing Lawyer Sanctions, Section 10(B)(2)(a). Moreover, the factual allegations contained in relator's motion for default, adopted by both board member Perdue and the board, do not allege any dishonest or selfish motive on the part of respondent. See *id.* at Section 10(B)(2)(b).

**{¶ 16}** Accordingly, we impose a two-year suspension with the second year of the suspension stayed. After one year, respondent may apply for reinstatement under Gov.Bar R. V(10)(A). To be eligible for reinstatement to the practice of law, in addition to satisfying the conditions enumerated in the rule, respondent must complete a minimum of six hours of continuing legal education on law office management during the first year of the suspension. Failure to fulfill these conditions will result in the denial of any possible application by respondent and/or the reinstatement of respondent's stayed suspension.

*Judgment accordingly.*

MOYER, C.J., DOUGLAS, F.E. SWEENEY, PFEIFER and LUNDBERG STRATTON, JJ., concur.

RESNICK, J., concurs in part and dissents in part.

———————————

**ALICE ROBIE RESNICK, J., concurring in part and dissenting in part.**

{¶ 17} I agree with the imposition of a two-year suspension with the second year of the suspension stayed. However, I do not agree with the continuing legal education condition imposed by the majority. Instead, I would order that respondent be placed on probation for the second year of his suspension, and I would further require that relator choose a monitor to assist respondent during that time, if respondent succeeds in being reinstated to the practice of law after his actual suspension is served.

————————————

*Jonathan E. Coughlan,* Disciplinary Counsel, and *Lori J. Brown,* First Assistant Disciplinary Counsel, for relator.

*Mark Aultman, Charles W. Kettlewell* and *Charles J. Kettlewell,* for respondent.

————————————